The Herring County Line School District of Coleman and Runnels Counties and the Talpa County Line Consolidated Independent School District of the same counties voted to consolidate in the manner prescribed by article 2806 (Vernon's Ann.Civ.St.), and became the Talpa County Line Consolidated Independent School District No. 50; the administration thereof being placed in Coleman county. This new district then voted to assume and pay off $5,700 of bonds outstanding against the old Talpa district and $2,000 against the former Herring district; and on June 30, 1934, the new district voted additional bonds in the sum of $17,500 with which to erect a new school building. After the notices of this election were posted, the residents on 6,567 acres of the lands in the new district, but situated in Runnels county, petitioned the county school trustees of Runnels county, seeking under the provisions of article 2742f (Vernon's Ann.Civ.St.) to detach the 6,567 acres from the newly created Talpa district and to have same added or annexed to Crews Consolidated Common School District, which was situated wholly within Runnels county. Notice of the filing of the petition was given the county school trustees of Coleman county and the district trustees of the new Talpa district. They refused to concur in and objected to detaching the 6,567 acres from said new Talpa district; but on June 11, 1934, the county school trustees of Runnels county granted the petition for detaching such territory, and provided that "the adjustment of the outstanding bonded indebtedness against the territory so detached shall be left to a later date." No adjustment was ever made, and the Crews district has never paid any part of the taxes collected by it on the outstanding bonds, but is holding, subject to the decision in this case, the taxes collected for 1934 and 1935.
The trustees of the Talpa district and the county school trustees of Coleman county appealed to the State Superintendent from the action of the Runnels county school trustees detaching the lands. He ruled that the order detaching the land was illegal, and ordered that the taxes collected by the Crews district be returned to the Talpa district, and on an appeal to the State Board of Education the decision of the State Superintendent was affirmed. The state of Texas, by its district attorney, upon relation of the Talpa district, its trustees, and the county school trustees of Coleman county, instituted this quo warranto proceeding against the county school trustees of Runnels county, the Crews district, and the tax assessor-collector of Runnels county, seeking to have the detaching order declared illegal and void, and to require the payment of the taxes collected from the detached territory paid to the Talpa district; and the trial court so held and ordered the taxes paid to the Talpa district.
Sifted down, the question presented is whether the county school trustees of Runnels county can detach lands situated in that county from the Talpa County Line Consolidated Independent School District without the consent and over the objection of its trustees and the county school trustees of Coleman county, which has the administrative control of the district. We hold that the Talpa county line district could not be legally changed *Page 1003 
without the consent and action of the county school trustees of both Coleman and Runnels counties.
The statutes relating to the creation of school districts are many and varied, and a liberal and practical interpretation must be given them; otherwise they would fail because of indefiniteness and conflicts. In the beginning, the Legislature sought to treat the common school districts, independent school districts, consolidated school districts, and county line school districts by separate acts, as is shown by the various statutes under the title "Education" (chapter 13, articles 2741, 2815g — 9); but as time has progressed, the rules and methods with regard to the establishment and creation of these districts have been more or less applied to each character of school district; and the matter of rearranging and consolidating districts in counties and in the creation of county line school districts has been before the Legislature on many occasions. This, of course, has resulted in much confusion in these statutes, and for that reason we shall give a practical and liberal interpretation to the statutes which we think are involved in this case.
The consolidation of the two districts in question was had under article 2806 (Rev.St. 1925), as amended on several occasions (Vernon's Ann.Civ.St. art. 2806), by a vote of the people of the two districts affected. Since the districts were partly in two counties, it required the action of the officials of both counties to effect the consolidation; and the consolidated district was legally created. Article 2815 provides that "such consolidated districts may in the same manner provided for their consolidation be dissolved and the districts included therein restored to their original status." This provision relates more particularly to consolidated districts wholly within one county. So, these statutes must be construed in connection with statutes relating to county line school districts; and it necessarily follows that in county line school districts, either in their creation or abolition, or in the changing of their district boundaries, the school authorities of both counties or all counties affected should act together in such matters. Article 2743 provides the method for the creation of county line school districts. Article 2744 defines the powers of such a district, and provides that administrative jurisdiction or control is to be given one or the other county involved, as determined by the acts of consolidation. This article further provides that "such district shall not be changed or abolished except by the consent of the commissioners court of each county having territory contained therein, and if such a district has outstanding bonds the same shall not be changed or abolished in any way until after such bonds are finally paid or discharged."
However, other articles relating to the educational system have provided for the adjustment of outstanding bond indebtedness, where the district voting them has been rearranged, and where territory has been either detached from or added to such district. In 1931 the Legislature passed far-reaching and extensive statutes with regard to rearranging and consolidating school districts, and for detaching and annexing territory from one school district to another. Article 2742c, Vernon's Ann.Civ.St. (Acts 1929, 41st Leg. p. 290, c. 134), provides that the "words, `school district,' as herein, used shall refer to common school districts or to independent school districts." Article 2742f, Vernon's Ann.Civ.St. (Acts 1929, 41st Leg. 1st Called Sess., p. 106, c. 47, as amended by Acts 1931, 42nd Leg. p. 235, c. 140, § 1), provides the manner for detaching territory from such school districts and attaching same to another. This method of detaching and annexing territory from contiguous school districts clearly relates to territory lying wholly within, and as affecting school districts lying wholly within, one county. This is evident from the language, that any act done "shall be in accordance with the provisions of the General Law governing common and independent school districts, respectively." It is also further evident from the provision in said article requiring that the petition shall give the metes and bounds of the proposed district, and be signed by a majority of the qualified voters residing in each territory to be detached, "provided that when the proposed new district will embrace territory lying in two or more counties, all orders affecting its establishment shall be concurred in by the County Board of Trustees of each county concerned."
It is fundamental that the county trustees of one county cannot alone create a district composed of territory lying in two counties; and as a practical *Page 1004 
matter it would follow that where a county line consolidated independent school district has been created by the joint action of both counties, it necessarily follows that that district cannot be abolished or changed except by the consent of the county school trustees of each county having territory contained therein. And if the district has outstanding bonds, the same shall not be changed or abolished until after some adjustment has been made by the county school trustees of both counties of such outstanding bond indebtedness. This was recognized by the county board of trustees of Runnels county in detaching the territory involved in this case and in attaching it to a school district in Runnels county, by the provision that the bond indebtedness outstanding against the Talpa consolidated district would thereafter be adjusted and "that adjustment shall be made equitably in conference with the trustees of the two districts affected."
It necessarily follows that if the equitable adjustment of the bond indebtedness must be made with the consent of the school trustees of both counties, then any change in the district against which the bonds were outstanding would have to be made with the consent of the trustees of both counties; and we are clear in the view that article 2742f does not permit the county trustees of one county to detach any portion of the territory of a county line school district and attach the same to another district, without the consent and concurrent action of the trustees of each county having territory in the county line district. To permit such would cause interminable confusion and would permit one party to the consolidation agreement to destroy that agreement, or seriously affect it without the concurrence or consent of the other party to such agreement.
Appellants cite the cases of Barber v. County Board of School Trustees (Tex.Civ.App.) 43 S.W.2d 319; Prosper Independent School Dist. v. Collin County School Trustees (Tex.Civ.App.) 51 S.W.2d 748, affirmed by Commission of Appeals, 58 S.W.2d 5. These cases throw no light on the question presented here. The first one simply holds that because of the vague, confusing, conflicting, and constantly changing statutes upon the subject of the creation, rearranging, and establishing of school districts, that a substantial compliance with what may be determined as the object of each act is all that can be hoped for, and that this can only be accomplished by a liberal construction of those acts to that end. The second case simply holds that the county school trustees have the authority to detach territory from one district, either common or independent, under the provisions of article 2742f. And in these cases the districts affected were entirely within one county and were not county line school districts.
As above pointed out, a different situation is created where a school district lies within two counties, and manifestly the county school trustees of one county cannot change the boundaries of such county line district without the consent of the school trustees of the other county involved.
We conclude that the action of the school trustees of Runnels county in detaching the 6,567 acres of land from the Talpa County Line Independent School District and in attaching same to the Crews Consolidated District of Runnels County was unauthorized, illegal, and wholly void; and hold that appellees have properly attacked same by this quo warranto proceeding. Under this conclusion, all other questions raised become immaterial.
The judgment of the trial court will be affirmed.
Affirmed.